ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI-DJ 2025-063A

| | | |
|---|---|---|
| **PRISCILA RIVERA NIEVES**<br>Recurrida<br><br>v.<br><br>**EDGAR BÁEZ SUÁREZ**<br>Peticionario | TA2026CE00414 | *CERTIORARI*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **Carolina**<br><br>Caso Núm.:<br>**TJ2023RF00086**<br><br>Sobre:<br>Alimentos |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de mayo de 2026.

Comparece ante nos el señor Edgar Báez Suárez (Báez Suárez o peticionario), mediante un recurso de *certiorari*, en el que solicita que revoquemos una *Resolución* emitida el 9 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI).[1] Por medio de dicho dictamen, el TPI le imputó capacidad económica al peticionario como sanción ante sus presuntos incumplimientos con órdenes previas.[2]

Por los fundamentos que pormenorizamos a continuación, expedimos el auto de *certiorari* y revocamos la *Resolución* emitida por el TPI el 9 de febrero de 2026.[3]

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI, Entrada Núm. 345. Notificada y archivada en autos el 3 de marzo de 2026.

[2] *Íd.*, Entrada Núm. 341. Mediante la solicitud de reconsideración, el Sr. Báez Suárez suplicó que se dejara sin efecto la *Resolución* dictada por el TPI el 9 de febrero de 2026, donde el foro *a quo* acogió la recomendación del examinador de pensiones alimentarias (examinador) y le imputó al Sr. Báez Suárez capacidad económica. Véase además, *Íd.*, Entrada Núm. 331.

[3] *Íd.*

**I.**

El 7 de julio de 2023, la señora Priscila Rivera Nieves (Rivera Nieves o recurrida) radicó una *Demanda* en concepto de alimentos, custodia, patria potestad y relaciones paternofiliales contra el Sr. Báez Suárez.[4] En síntesis, la Sra. Rivera Nieves adujo la existencia de una comunidad de bienes con el Sr. Báez Suárez, a pesar de no haber consumado el matrimonio. A esos efectos, solicitó del foro primario custodia compartida del menor E.M.B.R.-quien nació en el 2017-, al igual que la asignación de relaciones paternofiliales, durante fines de semana alternos. Por otro lado, argumentó que el Sr. Báez Suárez era dueño de varios negocios por lo que contaba con la capacidad económica para proveer una pensión justa y adecuada para su hijo. Cónsono con ello, solicitó descorrer el velo corporativo de Season 23 LLC, por presuntos actos ilegales o fraudulentos, y que se descubriera información sobre las otras dos corporaciones- JB & EV Enterprises y Paradise 21, LLC, ambas dedicadas a la industria de los restaurantes- para el cálculo de la pensión alimentaria del menor.

Por su parte, el 28 de agosto de 2023, el Sr. Báez Suárez presentó una *Contestación a Demanda* donde negó las alegaciones argüidas por la Sr. Rivera Nieves e incorporó sus defensas afirmativas.[5]

Posteriormente, el 19 de septiembre de 2023, se celebró una vista de Fijación de Pensión Alimentaria ante el examinador, en la que las partes acordaron una pensión alimentaria provisional de $2,000.00 mensuales, incluyendo la mensualidad escolar.[6] Ulteriormente, el TPI acogió las recomendaciones del examinador y

---

[4] *Íd.*, Entrada Núm. 1.
[5] *Íd.*, Entrada Núm. 13.
[6] *Íd.*, Entrada Núm. 28.

le impuso al Sr. Báez Suárez la obligación de proveer una pensión alimentaria provisional, efectiva el 1 de septiembre de 2023.[7]

Tras múltiples instancias procesales, el 22 de julio de 2024, el foro primario emitió una *Resolución* donde añadió un 73% de los gastos extraordinarios de salud y escuela a la pensión alimentaria provisional de $2,000.00 mensuales.[8]

Posteriormente, el 2 de octubre de 2025, la Sra. Rivera Nieves radicó una *Moción en Solicitud de Orden.*[9] Allí alegó que, durante la vista de Fijación de Pensión Alimentaria, del contrainterrogatorio del Sr. Báez Suárez surgió que, en el año 2021, este aportó una suma de $600,000.00 por concepto de capital a favor de la corporación Paradise 21, LLC, de la que él era accionista. En ese sentido, sostuvo que las planillas de contribución sobre ingresos personales, así como los estados bancarios del Sr. Báez Suárez, no reflejaban tal capacidad de ingresos. Por lo anterior, la Sra. Rivera Nieves solicitó del Tribunal que ordenase al Sr. Báez Suárez a producir evidencia acreditativa de la aportación en cuestión.

El 9 de octubre de 2025, el Sr. Báez Suárez presentó una *Moción en Cumplimiento de Orden y en Solicitud de Orden al Amparo de la Regla 23.2.*[10] Arguyó que se debía denegar la solicitud de la Sra. Rivera Nieves puesto que la información solicitada no guardaba relación con la petición de pensión alimentaria. Además, el descubrimiento de prueba había concluido.

El 16 de octubre de 2025, la Sra. Rivera Nieves radicó una *Réplica a "Moción en Cumplimiento de Orden y en Solicitud de Orden al Amparo de la Regla 23.2".* Mediante esta, informó que, el Sr. Báez Suárez realizó la aportación de capital dentro de los tres (3) años anteriores a la interposición de la *Demanda.*[11] Por tal razón,

---

[7] *Íd.*, Entrada Núm. 31.
[8] *Íd.*, Entrada Núm. 159. Notificada y archivada en autos el 31 de julio de 2024.
[9] *Íd.*, Entrada Núm. 283.
[10] *Íd.*, Entrada Núm. 288.
[11] *Íd.*, Entrada Núm. 289.

argumentó que dicha aportación era prueba directa de la capacidad económica del Sr. Báez Suárez. En consecuencia, el Tribunal debía tomarla en cuenta al momento de determinar la cuantía de pensión alimentaria.

Ese mismo día, la Sra. Rivera Nieves también radicó una *Moción en Solicitud de Orden* el 16 de octubre de 2025.[12] Allí afirmó que, en la vista ante el examinador celebrada el 26 de septiembre de 2025, se le concedió al Sr. Báez Suárez un término de dos (2) semanas para proveer cierta documentación, que incluía facturas y cheques desde 2021 al 2025, referente a Paradise 21, LLC. Transcurrido el término sin la presentación requerida, solicitó al Tribunal que ordenase al Sr. Báez Suárez a producir la documentación requerida de inmediato.

A esos efectos, el 30 de octubre de 2025, el TPI emitió una *Orden para que se Descubra lo Solicitado*, en la que declaró Ha Lugar la solicitud de descubrimiento de prueba presentada por la Sra. Rivera Nieves, con relación a la aportación capital de $600,000.00 a la antedicha empresa.[13] Asimismo, el foro primario concedió el término de diez (10) días para cumplir con la orden, <u>so pena de imposición de sanciones</u>.

Luego de una solicitud de prórroga presentada por el Sr. Báez Suárez,[14] el 20 de noviembre de 2025, el TPI emitió varias órdenes en las que apercibió al Sr. Báez Suárez de cumplir con la orden emitida en "3 días finales y perentorios, <u>so pena de imposición de severas sanciones económicas</u>".[15] (Énfasis suplido). Además, le ordenó a cumplir con cualquier requerimiento previamente efectuado, en un término final y perentorio de tres (3) días.[16]

---

[12] *Íd.*, Entrada Núm. 290.
[13] *Íd.*, Entrada Núm. 291. Notificada y archivada en autos el 30 de octubre de 2025.
[14] *Íd.*, Entrada Núm. 295.
[15] *Íd.*, Entradas Núms. 299-300.
[16] *Íd.*, Entradas Núms. 293 y 301.

Tras múltiples trámites procesales, el 31 de diciembre de 2025, la Sra. Rivera Nieves presentó una *Moción en Solicitud de Remedio y Otros Extremos.*[17] Adujo que, el 24 de diciembre de 2025, el Sr. Báez Suárez le remitió vía correo electrónico ciertos documentos con el fin de dar por cumplida la orden del Tribunal.[18] Detalló que el Sr. Báez Suárez sometió una declaración jurada a los fines de establecer que los fondos no provinieron de su capital, por lo que no existe transacción bancaria. Sin embargo, la Sra. Rivera Nieves sostuvo que los mismos no tenían relación alguna con la aportación de capital en cuestión. Por ende, tras el incumplimiento reiterado con las órdenes emitidas, solicitó al TPI la eliminación de las alegaciones del Sr. Báez Suárez, al igual que la imposición del pago del 100% de las necesidades del menor en contra del Sr. Báez Suárez.

Así las cosas, el 3 de febrero de 2026, el Sr. Báez Suárez radicó una *Moción en Oposición a Moción en Solicitud de Remedio y Otros Extremos.*[19] Reiteró que no existió una aportación de capital de $600,000.00 de sus propios fondos, por lo que tampoco podía existir evidencia del origen de dichos fondos. Arguyó que la declaración jurada no constituye un *sham affidavit* en vista de que su propósito no es crear una controversia ficticia, más bien su objetivo es aclarar su testimonio durante la deposición.

Ante ese cuadro, el 9 de febrero de 2026, se celebró una vista de Fijación de Pensión Alimentaria ante el Examinador.[20] Al evaluar las posturas de ambas partes y el estatus procesal del caso, el examinador hizo la siguiente recomendación, entre otras, al Tribunal: "Se le impute capacidad económica al demandado".[21]

---

[17] *Íd.*, Entrada Núm. 318.

[18] *Íd.*; véase además, *Anejos* los siguientes: *Anejo 1-* Comunicación Correo Electrónico; *Anejo 2-* Declaración Jurada; y *Anejo 3-* Contrato de Servicios Profesionales.

[19] *Íd.*, Entrada Núm. 324.

[20] *Íd.*, Entrada Núm. 330.

[21] *Íd.*

El mismo día, a tenor con dicha recomendación, el TPI emitió una *Resolución* donde le imputó al Sr. Báez Suárez la capacidad económica.[22]

Inconforme, el 24 de febrero de 2026, el Sr. Báez Suárez instó una *Solicitud de Reconsideración*.[23] En síntesis, alegó que la *Ley Orgánica para la Administración del Sustento de Menores*, Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501 *et seq.*, redirigía las Reglas de Procedimiento Civil, 32 LPRA Ap. V, cuando resultaba necesario sancionar a una parte por incumplimiento con una orden del Tribunal. Asimismo, argumentó que la solicitud de imputación de ingresos se realizó cuando carecía de representación legal, lo que constituyó una desventaja procesal. Además, expuso que no surgía del expediente que hubiese aceptado voluntariamente la imputación de capacidad económica, por lo que se trató de una sanción severa. Planteó que el TPI debió haber procedido con una sanción económica.

Sin embargo, el 3 de marzo de 2026, el TPI denegó la solicitud de reconsideración del Sr. Báez Suárez.[24]

Inconforme, el 6 de abril de 2026, el Sr. Báez Suárez presentó el recurso de *certiorari* donde planteó el siguiente señalamiento de error:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPUTAR CAPACIDAD ECONÓMICA AL RECURRENTE SOBRE TODOS LOS GASTOS Y NECESIDADES DE SU HIJO MENOR DE EDAD, EMBR [SIC] COMO SANCIÓN TRAS LA ALEGACIÓN DE LA RECURRIDA SOBRE INCUMPLIMIENTO CON EL DESCUBRIMIENTO DE PRUEBA Y EN GRAVE MENOSPRECIO DEL DEBIDO PROCESO DE LEY.**

Al día siguiente, el Sr. Báez Suárez también presentó una *Solicitud en Auxilio de Jurisdicción*. Ese mismo día, emitimos una *Resolución* declarándola Ha Lugar, y, paralizamos inmediatamente

---

[22] *Íd.*, Entrada Núm. 331.
[23] *Íd.*, Entrada Núm. 341.
[24] *Íd.*, Entrada Núm. 345. Notificada y archivada en autos el 3 de marzo de 2026.

los efectos de la *Resolución* recurrida. En su consecuencia, dejamos sin efecto el señalamiento de la vista final de fijación de pensión alimentaria, más no así, los pagos correspondientes a la pensión provisional.

Por su parte, el 23 de abril de 2026, la Sra. Rivera Nieves presentó un *Alegato en Oposición a Recurso de Certiorari*.[25]

## II.

## A.

El auto de *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones realizadas por un foro inferior y cuya expedición descansa en la sana discreción del tribunal. *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.,* 212 DPR 194, 207 (2023); *McNeil Healthcare, LLC v. Municipio de Las Piedras,* 206 DPR 391, 403 (2021). La característica distintiva del auto de *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. El concepto *discreción* necesariamente implica la facultad de elegir entre diversas opciones". *IG Builders v. BBVAPR,* 185 DPR 307, 338 (2012) (Énfasis en el original). No obstante, " 'en el ámbito judicial, la discreción no debe hacer abstracción del resto del Derecho. . . . Es decir, [la] *discreción* es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera' ". *IG Builders v. BBVAPR, supra,* pág. 338 (citando a *Pueblo v. Rivera Santiago,* 176 DPR 559, 580 (2009)) (Énfasis en el original); *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008).

En ese sentido, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que debemos tomar en consideración al evaluar si procede expedir el

auto de *certiorari. BPPR v. SLG Gómez-López,* 213 DPR 314, 336-337 (2023). La referida regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone al Tribunal de Apelaciones la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. Por tanto, de no estar presente ninguno de los criterios esbozados, procede que esta Curia se abstenga de expedir el auto solicitado. *Torres Martínez v. Torres Ghigliotty, supra,* págs. 96-97.

**B.**

Por otro lado, en nuestro ordenamiento jurídico es harto conocido que los casos sobre alimentos de menores están revestidos del más alto interés público. *Fonseca Zayas v. Rodríguez Meléndez,* 180 DPR 623, 632 (2011); Artículo 2 de las *Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico* (Guías

mandatorias), Reglamento Núm. 9535, Departamento de la Familia y Administración para el Sustento de Menores, 15 de febrero de 2024, pág. 1. La obligación alimentaria se fundamenta en el derecho constitucional a la vida y en la solidaridad familiar, y está consagrado en el *"Código Civil de Puerto Rico" de 2020*, Ley Núm. 55 del 1 de junio de 2020 (Código Civil de 2020), según enmendado, 3 LPRA secs. 5311 *et seq.* Véase, Art. II, Sec. 7, Const. PR, LPRA, Tomo 1; y en la Ley Núm. 5-1986, *supra* (Exposición de Motivos); *Fonseca Zayas v. Rodríguez Meléndez, supra,* pág. 623; *Mundo v. Cervoni,* 115 DPR 422, 426 (1984). A esos efectos, nuestro máximo foro ha establecido que toda persona tiene el derecho de " 'disfrutar de un nivel de vida adecuado que asegure para sí y para su familia[,] la salud, el bienestar y especialmente *la alimentación,* el vestido, la vivienda, la asistencia médica y los servicios sociales necesarios' ". *Fonseca Zayas v. Rodríguez Meléndez, supra,* págs. 632-633 (*citando a Rodríguez Pagán v. Depto. Servicios Sociales,* 132 DPR 617, 631 (1993)).

Los alimentos son "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia". Artículo 653 del Código Civil de 2020, *supra,* sec. 7531. Cuando el alimentista es menor de edad, esos alimentos incluyen también "su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales". Artículo 653 del Código Civil de 2020, *supra,* sec. 7531; véase además, *Rodríguez Pagán v. Depto. Servicios Sociales, supra,* pág. 633; Artículos 589 y 590 del Código Civil de 2020, *supra,* secs. 7241-7242. Asimismo, "aunque los derechos de la patria potestad facultan a la persona custodia para reclamar el pago de las pensiones a nombre de sus hijos, el menor es el acreedor de la

pensión alimentaria que finalmente se otorgue o acuerde". *Díaz Rodríguez v. García Neris*, 208 DPR 706, 720 (2022).

Ahora bien, la pensión alimentaria debe ser proporcional a los recursos de quien los provee y las necesidades de quien los recibe, y por ello, la pensión se reduce o aumenta en proporción a los recursos del alimentante y las necesidades de los hijos. *Fonseca Zayas v. Rodríguez Meléndez*, *supra*, pág. 634; *Pesquera Fuentes v. Colón Medina*, 202 DPR 93, 108 (2019). A tenor con este principio de proporcionalidad, se consideran recursos del alimentante, la posición social de la familia, y el estilo de vida del alimentante. *Fonseca Zayas v. Rodríguez Meléndez*, *supra*, pág. 634. De esta manera, se intenta poner al menor alimentista en la misma posición que ocuparía si la familia hubiera permanecido intacta, y ello se puede demostrar por medio de evidencia directa o circunstancial. *Fonseca Zayas v. Rodríguez Meléndez*, *supra*, pág. 634.

En aras de lograr que los padres o las personas legalmente responsables contribuyan a la manutención de sus hijos o dependientes, la Asamblea Legislativa aprobó la Ley Núm. 5-1986, *supra*. Artículo 3 de la Ley Núm. 5-1986, *supra*, sec. 502. Lo anterior, pues las tasas de divorcio han duplicado a partir del 1960 y "[e]l abandono de las obligaciones para con sus hijos, por parte de uno o ambos padres, es consecuencia del continuo deterioro de los valores sociales que culmina en la desintegración de la unidad familiar". Ley Núm. 5-1986, *supra* (Exposición de Motivos). También se adoptaron las Guías mandatorias, *supra*, pág. 1, para determinar las pensiones alimentarias de los menores de edad en Puerto Rico basadas en criterios numéricos y descriptivos facilitando el cómputo de la cuantía de la obligación alimentaria. Con el propósito de fijar la pensión, el Artículo 16 de la Ley Núm. 5-1986, *supra*, sec. 515, provee un descubrimiento compulsorio de información bajo el procedimiento judicial expedito. De este modo, una vez se emita una

orden de pensión alimentaria, "cualquiera de las partes podrá solicitar o el Administrador por iniciativa propia [podrá] iniciar, el procedimiento de revisión, y de proceder, de modificación de una orden de pensión alimentaria en cualquier momento fuera del ciclo de tres (3) años, cuando existan cambios sustanciales en las circunstancias del alimentista, de la persona custodia o de la persona no custodia tales como variaciones o cambios significativos o imprevistos en los ingresos, en la capacidad de generar ingresos, en los egresos, gastos o capital de la persona custodia o de la persona no custodia, o en los gastos, necesidades o circunstancias del menor". Artículo 19(c) de la Ley Núm. 5-1986, *supra*, sec. 518.

En lo específico, el Artículo 16 de la Ley Núm. 5-1986, *supra*, sec. 515 dispone que:

Específicamente, dispone lo siguiente:

En los procedimientos judiciales relacionados con pensiones alimentarias, el descubrimiento sobre la situación económica del alimentante y alimentista será compulsorio.

De solicitarlo cualesquiera de las partes, la presentación de una copia certificada de la planilla de contribución sobre ingresos, así como una certificación patronal del sueldo o salario, será compulsoria.

La Oficina de Administración de los Tribunales preparará un formulario para servir de guía respecto de la información mínima requerida sobre la situación económica de las partes, las necesidades del alimentista y la capacidad de pago del alimentante. El formulario completado y juramentado, u otro documento similar, también juramentado, que contenga toda la información requerida deberá radicarse en la secretaría del tribunal y notificarse a la otra parte con antelación a la vista y sujetará al declarante a las penalidades dispuestas para el delito de perjurio. La radicación del formulario no constituirá excusa respecto de la obligación de las partes de revelar todas las circunstancias que permitan determinar su particular situación económica.

La radicación de este formulario o de otro documento similar no constituirá impedimento para el uso de los mecanismos de descubrimiento de prueba, según establecido en las Reglas de Procedimiento Civil (32 L.P.R.A. Ap. III). No obstante, la decisión de usar los mecanismos de descubrimiento de prueba no será razón para suspender la vista señalada por el secretario del tribunal, según establecido en el Artículo 15 de esta ley (8 L.P.R.A. § 514). En esa vista se determinará el monto de una pensión provisional a ser recomendada al

juez y se señalará nueva vista para la fecha más próxima viable. La pensión provisional así fijada permanecerá en vigor hasta que el tribunal dicte una nueva resolución u orden.

Cuando se utilicen los mecanismos regulares de descubrimiento de prueba, no se concederán prórrogas para cumplir con los términos establecidos por las Reglas de Procedimiento Civil, (32 L.P.R.A. Ap. III), excepto mediante la demostración rigurosa de justa causa.

<u>Las sanciones provistas en las Reglas de Procedimiento Civil (8 L.P.R.A. Ap. III), por negarse a descubrir o por contestar en forma evasiva las preguntas formuladas como parte del procedimiento de descubrimiento de prueba, serán aplicadas con todo el rigor, incluyendo la imposición de honorarios de abogado.</u>

(Énfasis suplido).

Ahora bien, para establecer la capacidad económica de cada alimentante es preciso tomar en consideración todos los ingresos devengados por esta persona, "hasta los que no aparezcan informados en la planilla de información personal". *Argüello v. Argüello*, 155 DPR 62, 72 (2001). Es decir, el foro primario no está limitado a considerar solamente la prueba testifical o documental de los ingresos, sino que "[p]uede, al fijar la cuantía de la pensión, considerar aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso". *López v. Rodríguez,* 121 DPR 23, 33 (1941). En estos casos, a la luz de toda la prueba desfilada, el foro primario "puede *inferir* que el alimentante cuenta con medios suficientes para cumplir con la obligación alimentaria que se le imponga". *Argüello v. Argüello*, *supra*, pág. 73.

No obstante, hay instancias particulares en las que nuestro máximo foro ha reconocido la inaplicabilidad de las Guías mandatorias, *supra,* para el cómputo de las pensiones alimentarias. En particular, el alimentante no tiene que descubrir prueba sobre su situación económica al aceptar su capacidad para pagar la totalidad de la pensión alimentaria. *Díaz Rodríguez v. García Neris,*

*supra*, pág. 719. En dichos casos, solo resta determinar la suma justa y razonable que debe ser impuesta como pensión, a tenor con el Código Civil de 2020, *supra*, y en consideración de la condición económica y el estilo de vida del alimentante, junto a las necesidades del menor. *Díaz Rodríguez v. García Neris, supra*, págs. 719-720. Sin embargo, si la persona alimentante acepta su capacidad económica procede que pague el 100% de los gastos razonables de los menores y queda privado de impugnar la pensión bajo el argumento de no contar con los recursos necesarios para ello, haciéndose imposible activar el mecanismo delineado en las Guías mandatorias, *supra*. *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 571 (2012); *Pesquera Fuentes v. Colón Molina, supra*, pág. 111; *De León Ramos v. Navarro Acevedo,* 195 DPR 157 (2016).

Recientemente nuestro Tribunal Supremo expresó que la imputación de capacidad económica como mecanismo de sanción, conlleva consecuencias significativas que vulneran el principio de proporcionalidad y la voluntariedad. *Cuevas Rodríguez v. Miranda Beníquez*, 2026 TSPR 45, 217 DPR __ (2026). Resaltó, además, que la aceptación de capacidad económica se caracteriza por la voluntariedad. *Íd.* Ello en virtud de que, esta aceptación acarrea otras consecuencias importantes como la imposibilidad de impugnar *a posteriori* la pensión fijada. *Íd.* Precisó que:

> En suma, la imputación de capacidad económica como sanción constituye una medida atípica que incide directamente sobre el resultado sustantivo del caso, lo cual resulta incompatible con el propósito del derecho de alimentos de garantizar una pensión justa, adecuada y proporcional. *Íd.*

Por último, sostuvo que la propia Ley Núm. 5-1986 nos refiere a las Reglas de Procedimiento Civil para la imposición de sanciones en caso de un incumplimiento. *Íd.* Más aún, señaló que la legislación permite la imputación del ingreso promedio de la profesión y oficio de la parte alimentante. *Íd.* Específicamente, el Artículo 11 de la Ley

Núm. 5-1986 dispone que, en el caso de incumplimiento con el descubrimiento de prueba, <u>previo apercibimiento</u>, se podrá imputar "el ingreso promedio del oficio, ocupación, profesión del alimentante, según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente y continuar con el procedimiento administrativo autorizado por esta Ley, incluyendo hacer una determinación en rebeldía". 8 LPRA sec. 510.

Del mismo modo, si existiera la creencia de que el ingreso del alimentante es mayor al reportado, las Guías mandatorias, *supra,* permiten que el juzgador impute los ingresos de este. Nótese que, se deberá tener en consideración "aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso". *Argüello v. Argüello*, 155 DPR 62, 74 (2001); *López v. Rodríguez, supra*, pág. 33.

## C.

El funcionamiento efectivo de nuestro sistema judicial, al igual que la disposición rápida de los asuntos litigiosos requieren que los jueces del TPI posean gran flexibilidad y discreción para lidiar con el manejo y tramitación diario de los asuntos judiciales. *In re Collazo I,* 159 DPR 141, 150 (2003). Por tal razón, se les ha reconocido el poder y la autoridad suficiente para conducir las cuestiones litigiosas ante su consideración y para aplicar correctivos adecuados en la forma que su buen juicio les indique. *In re Collazo I, supra*, pág. 150. Cónsono con lo anterior, el foro primario posee el deber ineludible de garantizar que los procedimientos se ventilen sin dilaciones con miras a que se logre una justicia rápida y eficiente. *In re Pagani Padró*, 181 DPR 517, 529 (2011).

En ese sentido, los tribunales tienen a su disposición una serie de herramientas cuando las partes incumplen con sus órdenes; entre estas están las sanciones económicas. Regla 34.3 de Procedimiento Civil, *supra*, R. 34.3. Precisamente, la Regla 44.2 de Procedimiento Civil, *supra*, R. 42.2, permite que el tribunal imponga sanciones económicas en cualquier etapa del pleito a una parte o a su representante legal "por conducta constitutiva de demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia". Asimismo, "[s]i una parte o su abogado o abogada incumple con los términos y señalamientos de esta Regla, o incumple cualquier orden del tribunal para el manejo del caso sin que medie justa causa, el tribunal impondrá a la parte o su abogado o abogada la sanción económica que corresponda". Regla 37.7 de Procedimiento Civil, *supra*, R. 37.7.

### III.

A juicio del foro primario, procedía adjudicarle al Sr. Báez Suárez capacidad económica, a tenor con la recomendación del examinador.

Inconforme, el Sr. Báez Suárez arguyó que, el foro primario incidió en dicho proceder al imponer la capacidad económica en concepto de sanción, luego de incumplir con el descubrimiento de prueba.

En cambio, la Sra. Rivera Nieves planteó que constaba en el expediente que el foro primario concedió términos adicionales, apercibimiento de sanciones y oportunidad suficiente para que el Sr. Báez Suárez supliera prueba documental requerida sobre sus ingresos con el propósito de establecer la pensión alimentaria del menor. Por ende, sostuvo que el foro *a quo* actuó correctamente al reconocer la aceptación tácita de capacidad económica del Sr. Báez Suárez ante su negativa reiterada de cumplir con el descubrimiento de prueba.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario cometió el señalamiento de error imputado, pues, aunque en el tracto procesal se evidencian múltiples órdenes y apercibimientos de imponer severas sanciones económicas, el TPI no impuso ninguna conforme a lo dispuesto por las Reglas de Procedimiento Civil, *supra*, ni sobre las consecuencias de adjudicar capacidad económica previo a imputársela.

En nuestro ordenamiento jurídico es harto conocido que los casos sobre alimentos de menores están revestidos del más alto interés público. *Fonseca Zayas v. Rodríguez Meléndez, supra*, pág. 632. La obligación alimentaria se fundamenta en el derecho constitucional a la vida y en la solidaridad familiar. *Mundo v. Cervoni, supra*, pág. 426. Para fijar la pensión, el Artículo 16 de la Ley Núm. 5-1986, *supra*, sec. 515, provee un descubrimiento compulsorio de información bajo el procedimiento judicial expedito. Específicamente, dispone lo siguiente:

> Las sanciones provistas en las Reglas de Procedimiento Civil (8 L.P.R.A. Ap. III), por negarse a descubrir o por contestar en forma evasiva las preguntas formuladas como parte del procedimiento de descubrimiento de prueba, serán aplicadas con todo el rigor, incluyendo la imposición de honorarios de abogado.

(Énfasis suplido).

En ese sentido, la Regla 44.2 de Procedimiento Civil, *supra*, permite que el tribunal imponga sanciones económicas en cualquier etapa del pleito a una parte o a su representante legal "por conducta constitutiva de demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia". Asimismo, "[s]i una parte o su abogado o abogada incumple con los términos y señalamientos de esta Regla, o incumple cualquier orden del tribunal para el manejo del caso sin que medie justa causa, el tribunal impondrá a la parte o su abogado o abogada la sanción económica que corresponda". Regla 37.7 de Procedimiento Civil,

*supra*. Incluso, "nada impide que los tribunales impongan sanciones más severas luego de que la parte sea debidamente apercibida de la situación y de las consecuencias que acarrearía un incumplimiento subsiguiente". *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, *supra*, pág. 214. (Énfasis suplido).

Por otro lado, la Ley Núm. 5-1986 permite que, en el caso de incumplimiento con el descubrimiento de prueba, previo apercibimiento, se podrá imputar "el ingreso promedio del oficio, ocupación, profesión del alimentante, según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente y continuar con el procedimiento administrativo autorizado por esta Ley, incluyendo hacer una determinación en rebeldía". 8 LPRA sec. 510.

En el presente caso, la Sra. Rivera Nieves adujo que, durante el contrainterrogatorio del Sr. Báez Suárez, este informó que, en el año 2021, realizó una aportación de $600,000.00 en concepto de capital a la corporación Paradise 21, LLC, de la que él era accionista.[26] Asimismo, del *Operating Agreement of Paradise 21 LLC* surge claramente que la aportación del Sr. Báez Suárez en calidad de miembro fue de $600,000.00.[27] Específicamente, a cambio de esa contribución inicial de capital, el Sr. Báez Suárez recibió un interés de membresía de un 60.00%.[28]

Ante ello, el foro primario ordenó al Sr. Báez Suárez a descubrir la siguiente información y documentación:

> Evidencia del origen del dinero que proveyó como aportación de capital el demandado al momento de la creación de la corporación Paradise 21, LLC.;

---

[26] *Íd.*, Entrada Núm. 283.
[27] *Íd.*, Entrada Núm. 284, Anejo 1.
[28] *Íd.* "3.1. Initial Capital Contribution. The initial capital contribution of the Member will be made by the Member's transferring to the Company the property described in Schedule II hereto. In exchange for the Initial Contribution, the Member herewith *received* Membership Interest as set forth in Schedule I of this Agreement." (Énfasis suplido).

Evidencia de cualquier estado bancario, cuenta de inversiones, plan de retiro, moneda virtual y/o cualquier evidencia tangible que certifique la existencia de $600,000.00 a nombre del demandado;

Copia del retiro de fondos por concepto de la cantidad de $600,000.00 para llevar a cabo la transacción de aportación de capital a la corporación Paradise 21, LLC.;

Copia del depósito que realizó el demandado que evidencie el destino de la transacción de $600,000.00 que concretizó su aportación de capital;

Copia de todo tipo de transacción electrónica, cheque, giro, transferencia que sustente, tanto el origen, como la transacción, como el depósito, de los $600,000.00 que aportó de su propio patrimonio el demandado a la creación de la corporación Paradise 21, LLC.[29]

Surge del expediente que el Sr. Báez Suárez incumplió con dicho descubrimiento, y, en su consecuencia, el foro primario emitió múltiples apercibimientos de sanciones económicas.[30] Sin embargo, el tracto procesal revela que el TPI no impuso ninguna sanción económica al Sr. Báez Suárez, ni advirtió sobre las consecuencias que acarrearía el incumplimiento. A pesar de ello, el Sr. Báez Suárez adujo que no existía evidencia sobre la aportación de $600,000.00.[31] Sostuvo que la suma antes mencionada fue una aportación de capital nominal y que nunca consistió en dinero en efectivo, cheques, transferencias, inversiones ni retiro alguno de cuentas bancarias.[32] Tras evaluar las posturas de las partes, el examinador recomendó imputar la capacidad económica del Sr. Báez Suárez por los reiterados incumplimientos con las órdenes del TPI.[33] Consecuentemente, el foro primario acogió la recomendación antes mencionada en la cual imputó la capacidad económica del Sr. Báez Suárez.[34]

---

[29] *Íd.*, Entrada Núm. 291.
[30] *Íd.*; *Íd.*, Entrada Núm. 293; *Íd.*, Entradas Núms. 299-301.
[31] *Íd.*, Entrada Núm. 318, Anejo 2 Declaración Jurada.
[32] *Íd.*
[33] *Íd.*, Entrada Núm. 330.
[34] *Íd.*, Entrada Núm. 331.

Según adelantáramos, "la aceptación de capacidad económica es una decisión *voluntaria,* que toma un padre o una madre, mediante la cual se compromete a cubrir *todas* las necesidades que en su día se establezcan como parte de una pensión alimentaria". *De León Ramos v. Navarro Acevedo, supra*, pág. 176. Así las cosas, al imputar la capacidad económica como medida de sanción se priva al alimentante de mecanismos de impugnación de la pensión fijada. *Cuevas Rodríguez v. Miranda Beníquez, supra.* Además, interviene con otras disposiciones contempladas en las Guías mandatorias, como la proporcionalidad. *Íd.* Reiteramos que, la Ley Núm. 5-1986 hace referencia a los mecanismos de sanción dispuestos en las Reglas de Procedimiento Civil. Por otro lado, la Ley Núm. 5-1986 también permite que, de imputar el ingreso del alimentante, sea a la luz del ingreso promedio del oficio, ocupación, o profesión de la parte alimentante, conforme a la prueba disponible. 8 LPRA sec. 510.

En vista de que el Sr. Báez Suárez no aceptó voluntariamente la imputación de capacidad económica, resolvemos que el foro primario abusó de su discreción al adjudicársela. Resolvemos que el TPI tenía que recurrir a las sanciones provistas en las Reglas de Procedimiento Civil. En la alternativa, de continuar el incumplimiento del alimentante, podrá imputar el ingreso del alimentante de conformidad con el Artículo 11 de la Ley Núm. 5-1986. Por tal razón, el TPI incurrió en el señalamiento de error planteado por el Sr. Báez Suárez.

**IV.**

Por las razones discutidas anteriormente, expedimos el auto de *certiorari* y revocamos el dictamen recurrido. De igual modo, se devuelve el caso de epígrafe al foro primario para la continuación de los procedimientos, conforme con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones